WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deborah Orndoff,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of the Social Security Administration,<br><br>    Defendant. | No. CV-10-1098-PHX-LOA<br><br>**ORDER** |

Plaintiff seeks judicial review of the Commissioner of Social Security's denial of her application for disability insurance benefits. *See* 42 U.S.C. § 405(g). The parties have filed briefs addressing Plaintiff's claims, in accordance with Local Rule of Civil Procedure 16.1. (Docs. 15, 19, 20) The parties have consented to proceed before a United States Magistrate Judge. (Docs. 8, 11) Based on the record as a whole and the applicable law, the Court will affirm that decision of the Commissioner which is supported by substantial evidence and free from legal error.

**I. Procedural Background**

On November 4, 2005, Plaintiff filed a claim for Disability Insurance Benefits ("DIB"), alleging disability retroactive to May 27, 2005. (Tr. 76) The claim was denied by the Social Security Administration. On December 11, 2006, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 49, 55) After conducting a hearing, on August 28, 2008, the ALJ found Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 38-46) This decision became final when the Appeals

Council denied Plaintiff's request for a review. (Tr. 1-3) As such, Plaintiff seeks judicial review of this decision, pursuant to 42 U.S.C. § 405(g). The matter is fully briefed and ripe for review.

**II. Applicable Legal Standards**

    **A. Sequential Evaluation Process**

A "disability" is defined by the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). An individual is determined to be under a disability if "[her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the initial burden of proving disability. 42 U.S.C. § 423(d)(5); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). If the claimant shows that she is unable to perform past relevant work, the burden shifts to the Commissioner to show that the claimant "can perform other substantial gainful work that exists in the national economy." *Takcett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

An ALJ determines an applicant's eligibility for DIB by following the five steps listed below:

    (1) determine whether the applicant is engaged in "substantial gainful activity";

    (2) determine whether the applicant has a "medically severe impairment or combination of impairments";

    (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

    (4) if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant has the residual functional capacity to perform his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

*Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)). At the fifth step, the burden of proof shifts to the Commissioner. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098).

Applying the five-step analysis, the ALJ found that Plaintiff has a severe impairment, but retains the residual functional capacity to perform her past relevant work. (Tr. 38, 44) Further, the ALJ found that Plaintiff retained the residual functional capacity to perform a wide range of jobs existing in the national economy. (Tr. 44) Thus, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (Tr. 46)

**B. Standard of Review**

This Court must affirm the Commissioner's findings if they are supported by substantial evidence and are free from reversible legal error. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (*per curiam*); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). In determining whether substantial evidence supports a decision, the court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Sandgathe,* 108 F.3d at 980 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)). The ALJ is responsible for resolving conflicts, determining credibility, and resolving ambiguities. *Andrews,* 53 F.3d 1035 at 1039; *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court will only overturn the ALJ if the decision is not supported by substantial evidence. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). If sufficient evidence supports the ALJ's determination, the court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990). Moreover, if a reasonable mind could understand the evidence to support either outcome, the Court is to defer to the decision of the ALJ. *Richardson v. Sullivan*, 981 F.2d

1016 (9th Cir. 1992) (citations omitted). Therefore, if on the whole record before the court, substantial evidence supports the Commissioner's decision, this court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C.A. § 405(g).

**III. Facts**

**A. Plaintiff's Background**

Plaintiff was born on October 14, 1956 and was 51 years old at the time of the administrative hearing. (Tr. 9) Plaintiff has a high school education and attended two years of nursing school, but does not have a nursing certificate. (Tr. 9) Plaintiff claims disability due to lower back injuries with an onset date of May 27, 2005. (Tr. 76, 87) Plaintiff's past relevant work includes medical assistant and medical records worker. She most recently worked as an OB Technician. Her employment was terminated on May 27, 2005 because she failed a drug test after taking medication that was not prescribed for her. (Tr. 87, 88)

**B. Medical Evidence Regarding Physical Impairments**

Plaintiff suffers from lower back pain due to disc osteophyte complex, facet disease and ligamentum flavum thickening that results in spinal stenosis at L4-5. (Tr. 188) Between June 8 and August 23, 2005, Plaintiff saw Dr. David Kane, M.D., an anesthesiologist, for treatment of low back pain. (Tr. 187) Dr. Kane treated Plaintiff with injections/nerve blocks. (Tr. 185, 187, 201-02, 227-30, 237-41, 251-53) During a June 8, 2005 examination, Dr. Kane noted back muscle spasms; normal extremity muscle strength; increased, but symmetrical, deep tendon reflexes; minimally decreased thoracolumbar spine ranges of motion; and questionable lower left extremity sensory deficit. (Tr. 239) Dr. Kane noted Plaintiff ambulated without an assistive device. (Tr. 239) Plaintiff reported that prescription pain medication was somewhat effective in controlling her pain. (Tr. 238) In a June 30, 2005 report, Dr. Kane noted that Plaintiff had significant functional limitations. (Tr. 344)

In October of 2005, Plaintiff began treatment with Dr. Wesley Johnson, M.D. an orthopedic surgeon, who treated her low back pain between May 10, 2005 and October 3, 2006. (Tr. 182, 208-212, 218-224, 243-45, 250, 271-75, 279-287, 301, 308, 347) Dr. Johnson

1 performed a lumbar disc decompression and fusion on October 13, 2005 to address Plaintiff's
2 spinal stenosis. (Tr. 209-212).

3 On October 28, 2005, Plaintiff saw Dr. Johnson's physicians assistant, Sean
4 Suttle, for a post-surgery evaluation. The physicians assistant reported Plaintiff as "bright,
5 cheerful and smiling, very happy with her procedure." (Tr. 244) Further, her back pain was
6 "alleviated by her standards," and she was only taking one-half pill of Percocet - primarily for
7 the left knee pain, as opposed to for any back pain. (Tr. 244) The visit was "very pleasant."
8 (Tr. 244)

9 On December 10, 2005, two months after the surgery, Plaintiff completed a
10 Function Report to assist the Social Administration in processing her disability claim. (Tr. 95-
11 105) Plaintiff explained that because of her back pain, she needed assistance with personal care,
12 she used a walker to ambulate, was unable to cook or clean, and rotated between sitting,
13 walking, and laying down throughout the day. (Tr. 98-104) Three days later, Plaintiff met with
14 Dr. Johnson who reported that she was "doing wonderful . . . not having much in the way of
15 back pain and she is happy with her results so far." (Tr. 243)

16 At the request of the State agency, Dr. Robert Barker, II, M.D. examined Plaintiff
17 on January 23, 2006. (Tr. 309-312) Dr. Barker reported that Plaintiff's pain, which was
18 relieved by surgery in October 2005, had returned as a "different kind of pain." (Tr. 309)
19 Plaintiff reported that she walks a quarter of a mile 3 times daily. And, she has a walker but it
20 is not required for ambulation. (Tr. 309) Plaintiff was uncooperative and had to be coaxed to
21 perform activities. She sat comfortably and stood without issue. (Tr. 310) She had no trouble
22 getting on or off the examination table, but showed poor range of motion "even in areas where
23 she was not complaining of any abnormality . . . ." (Tr. 310) Although Plaintiff complained
24 of pain when raising her legs, she did so without difficulty when distracted. (Tr. 311) Plaintiff
25 had reported in December 2005 that she was "unsteady on [her] feet" (Tr. 98), but Dr. Barker
26 found no problems with her balance. (Tr. 311) Also, when asked to forward flex, [Plaintiff]
27 was unable to go past ten degrees. But when sitting, she was able to forward flex to "at least
28 60 degrees without any discomfort." (Tr. 311) Plaintiff was able to climb stairs without her

walker. (Tr. 311) Dr. Barker also noted that Plaintiff exhibited very strong positive Waddell testing,[1] demonstrating, superficial tenderness, positive overreaction, and positive distraction. (*Id.*) As a result of his examination, Dr. Barker found that there were numerous inconsistencies between Plaintiff's reported limitations and her physical limitations. (Tr. 311-312) Dr. Barker found that Plaintiff could lift 20 to 30 pounds occasionally and 10 to 20 pounds frequently; stand/walk and sit six hours daily; ambulate without an assistive device; frequently climb, balance, stoop, kneel, crouch, and crawl; and push/pull with upper or lower extremities, handle, finger, and feel without restriction; and that she had no visual or environmental limitations. (Tr. 211-12)

On February 3, 2006, Dr. Dillian A. LaSalle, M.D., a state agency physician, conducted a Physical Residual Functional Capacity Assessment and reached conclusions similar to Dr. Barker's. (Tr. 254-59) Dr. LaSalle determined that Plaintiff could occasionally lift up to 20 pounds, frequently lift up to 10 pounds, and stand and/or walk and sit for six hours during an eight-hour work day; push/pull without limitation; climb ladders/ropes/scaffolds and stoop occasionally; and climb ramps/stairs, balance, kneel, crouch, and crawl frequently; and that she had no manipulative, visual, communicative, or environmental limitations. (Tr. 255-58) Dr. LaSalle opined that Plaintiff's reports of her symptoms were "less than credible" because they were inconsistent with the medical record. (Tr. 259)

One month later, on March 1, 2006, Plaintiff was again treated by Dr. Johnson's office. During the appointment, Dr. Johnson reiterated that he was not ready to clear her for work. (Tr. 274) Dr. Johnson noted that Plaintiff was not acting within her limitations. (Tr. 273) For example, she was "twisting to demonstrate a point or to pick up something behind her." (Tr. 273) On March 3, 2006, Dr. Johnson concluded that Plaintiff should not work for six months to one year following the type of back surgery Plaintiff had on October 13, 2005. (Tr. 347) On May 24, 2006, Plaintiff was back in Dr. Johnson's office. (Tr. 272) The doctor

---

[1] Waddell tests are a set of five maneuvers performed during a routine physical examination that identify patients in whom nonorganic issues play a role in the persistence of symptoms. www.affp.org/afp/991115ap/2299.html.

- 6 -

noted "considerable improvement," citing her ability to walk over a quarter-mile with only some discomfort. (Tr. 272) Plaintiff reported considerable improvement in her back pain, and denied muscle weakness, radicular pain, or dysthesias. (Tr. 272) Dr. Johnson noted that he would see Plaintiff again in four months. (*Id.*)

During an October 3, 2006 appointment - nearly twelve months after Plaintiff's surgery - Dr. Johnson noted that Plaintiff was doing well, with "far less" back pain. (Tr. 271) She indicated her pain was intermittent, and could be controlled with Tylenol. (Tr. 271) Plaintiff reported being able to travel and "do a few things." (*Id.*) Dr. Johnson noted that Plaintiff's pain relief was better than 50% and, while she was not "optimal," she was "clearly improved." He suggested a "conservative course," and indicated that he would see her "as her needs [arose]." (Tr. 271) The record reflects no further appointments with Dr. Johnson.

Three days later, on October 6, 2006, Plaintiff completed another Function Report for SSA. (Tr. 134-141) This report showed consistent improvement from the previous report. She still needed assistance for some tasks - getting dressed, blow drying her hair, and other activities that required the lifting of her arms. (Tr. 135) But, she reported being able to cook, do dishes, do some laundry, iron, and clean. (Tr. 135) She reported being unstable on her feet, difficulty lifting more than five pounds, and difficulty bending. (Tr. 139-140)

On December 6, 2006, Dr. Terry Ostrowski, M.D., a State agency physician, conducted a physical residual functional capacity assessment. Dr. Ostrowski's conclusions were nearly identical to Dr. LaSalles', with the exception of finding more flexibility through Plaintiff's mid-section. (Tr. 255, 314-17) Dr. Ostrowski found Plaintiff's reports of her symptoms to be "less than credible." (Tr. 259)

On January 3, 2007, Plaintiff saw Dr. M. A. Kazmi, M.D, for back pain. (Tr. 326-328) Plaintiff reported that she was experiencing "intense pain . . . 9 on the scale of 0 to 10 . . . ." (Tr. 326) She reported experiencing "pain in all positions" and said she was unable to perform activities of daily living. (Tr. 326) Plaintiff told Dr. Kazmi she was taking Tylenol and Motrin for her pain. (Tr. 326-28) Dr. Kazmi found abnormal lower extremity sensory functioning, absent deep tendon reflexes, positive straight leg raise testing, and ambulation with

a cane. (Tr. 327) Dr. Kazmi recommended Plaintiff see Judy Stratton, a physical therapist. (Tr. 329)

On January 22 and 23, 2007, Plaintiff saw Stratton for a functional capacity evaluation. (Tr. 329-40) Stratton concluded that Plaintiff was not a candidate for physical therapy, because of "extreme neural tension present in her left lower extremity and trunk." (Tr. 329) Stratton suggested pain management, including "meditation, relaxation, self hypnosis, and . . . biofeedback exercises." (*Id*.) Stratton concluded that Plaintiff was not "capable of returning to a job either in nursing or in any other occupation in the work force at this time." (*Id*.)

A year after Stratton's examination, Plaintiff returned to Dr. Kazmi on January 17, 2008. (Tr. 323-24) Dr. Kazmi noted intense pain and found musculoskeletal problems and neurologic problems. (Tr. 323) Dr. Kazmi found Plaintiff unable to work, prescribed her with pain killers, and recommended she see Dr. Kane for pain management. (Tr. 324)

**IV. Administrative Hearing Testimony**

During the April 28, 2008 administrative hearing, Plaintiff and vocational expert, Sandra K. Richter, testified. (Tr. 5-35) Plaintiff testified that she had back pain and left leg pain for which she took medication, that was somewhat effective, and used a prescribed cane regularly. (Tr. 10-11, 13-15, 19-23) Plaintiff testified that back surgery had not helped her, provided no relief, and had worsened her pain. (Tr. 11) She also testified that she could "do" steps, and that she tended to her personal needs with occasional difficulty, could read, and socialized at church services and during other activities. (Tr. 15-18). She also testified that she tried her hardest at the physical therapy test in 2007, and was in a lot of pain by the end of the two days. (Tr. 22) Plaintiff testified that, because of the pain, she would is unable to work. (Tr. 22) When asked about her examination by Dr. Barker, Plaintiff testified that it lasted only five minutes and she was unable to perform many of the activities because she was using a walker. (Tr. 21)

The vocational expert, Richter, testified that Plaintiff's past work as a medical assistant and a medical records worker, as typically performed, were light jobs. (Tr. 25) She

testified that a person with the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently; walk/stand and sit six hours in an eight-hour workday; push/pull without restriction; climb, stoop, crouch, and crawl occasionally; balance and kneel frequently; and perform work allowing a sit/stand option one to two times hourly, could perform light work, including Plaintiff's past jobs as a medical assistant and a medical records worker. (Tr. 25, 28) She also testified that, considering a person of Plaintiff's age, education, past relevant work experience, and residual functional capacity, jobs existed in the national economy that such a person could perform, including cashier and parking lot attendant. (Tr. 27-31)

**V. The ALJ's Decision**

On August 27, 2008, the ALJ issued his decision denying Plaintiff's application for DIB. (Tr. 38-46) At the first step of the analysis, the ALJ found that Plaintiff had not performed any substantial gainful activity since the disability onset date of May 27, 2005. (Tr. 38) At the second step, the ALJ found that Plaintiff had a "severe" impairment - degenerative disc disease status post surgery (decompression and fusion of L4-L5). (Tr. 38, 45) At the third step, the ALJ found that the severity of Plaintiff's impairment did not meet or medically equal any impairment listed in 20 CFR, Part 404, Subpart P, Appendix 1. (Tr. 39, 45) At the fourth step, the ALJ found that Plaintiff retained the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently; walk/stand and sit for six hours in an eight-hour workday; push/pull without restriction; climb, stoop, crouch, and crawl occasionally; balance and kneel frequently; and perform work allowing a sit/stand option with a position change once or twice hourly. (Tr. 45) In view of record and the vocational testimony, the ALJ found that, although Plaintiff did not retain the residual function to work as an OB Technician, she retained the ability to perform light exertional work, including her former jobs as a medical assistant or medical records worker. (Tr. 44-46) At the fifth step, the ALJ further found that Plaintiff had the capacity to perform other jobs existing in significant numbers in the national economy. (Tr. 44) Thus, the ALJ found Plaintiff was not disabled.

In reaching his conclusion, the ALJ found that the medical records indicated that Plaintiff's condition had continually improved after the six-month surgical recovery period,

- 9 -

although Plaintiff alleged "greater and continued debilitating pain . . . ." (Tr. 40) The ALJ noted that her strength, as well as her sensation, was intact. (Tr. 40) The ALJ also noted that Plaintiff controlled her pain with Tylenol, was able to travel, and had been released by Dr. Johnson.

The ALJ noted inconsistencies between the medical records and Plaintiff's reports of her symptoms. Specifically, the ALJ stated that, "the records show the claimant was more active than alleged." She went for walks, did not need her walker, traveled extensively with her husband in a recreational vehicle ("RV"), and now lives in the RV. (Tr. 40-42) The ALJ noted that Plaintiff did not stop working because of the severity or limitation of her pain. Instead, she was terminated after failing a drug test. (Tr. 42)

## VI. Analysis

Plaintiff argues that: (1) The ALJ should have considered, at least, a finite period of disability in excess of 12 months; (2) the ALJ erred in rejecting the opinions of treating physicians; and (3) the ALJ misinterpreted evidence to the detriment of the claimant. Plaintiff asks the Court to overturn the Commissioner's decision and award disability benefits. As discussed below, the Court finds that the substantial evidence supports the Commissioner's determination and that it is free from legal error. 42 U.S.C. § 405(b); *Ukolov v. Barhnart*, 420 F.3d 1002, 1004 (9th Cir. 2005). Accordingly, the Court will affirm the denial of disability benefits.

### A. Length of Period of Disability Considered by ALJ

Plaintiff argues that the ALJ should have considered a period of disability in excess of 12 months. (Doc. 15 at 4) Plaintiff argues that she had a medical finding of severe lumbar canal stenosis in mid-2005, for which she underwent surgery with Dr. Johnson in October 2005. Plaintiff states that Dr. Johnson did not release her to work until October of 2006 - over 12 months after the disability onset date. Plaintiff claims that the ALJ rejected the opinion of treating physician Dr. Johnson by failing to find that Plaintiff's impairment lasted at least 12 months.

A claimant for Social Security benefits bears the burden of proving disability by

establishing a physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in any substantial gainful activity. *Barnhart v. Walton*, 535 U.S. 212, 220 (2002); 42 U.S.C. § 423 (d)(1)(A).

The record reflects that the ALJ found that Petitioner had "severe" lumbar spine degenerative disc disease post surgery. The existence of an impairment alone is insufficient to establish disability. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). Rather, Plaintiff must show that her severe impairment prevented her from engaging in any substantial gainful activity. *Matthews*, 10 F.3d at 680. Plaintiff's argument regarding the period of disability which the ALJ considered is unclear. Contrary to Plaintiff's suggestion that the ALJ failed to consider her medical records dating from early 2005 - before her October 2005 back surgery, the ALJ's decision indicates that he reviewed the entire record. (Tr. 40) Even before Plaintiff's October 2005 back surgery, examinations noted the absence of radicular pain (Tr. 282), minimally decreased thoracolumbar spine ranges of motion (Tr. 239), full hip ranges of motion (Tr. 286), normal to only slightly reduced lower extremity muscle strength (Tr. 239, 284, 286), intact or only questionable abnormal sensory functioning (Tr. 210, 239), intact reflexes (Tr. 210, 239), and the ability to sit reasonably comfortably (Tr. 285).

Dr. Johnson performed Plaintiff's back surgery on October 13, 2005. During a March 1, 2006 follow-up visit, Dr. Johnson stated that Plaintiff should "be completely off work" for at least the "immediate 6 months" following her October 2005 back surgery. (Tr. 275) At his last appointment with Plaintiff, Dr. Johnson noted that she only needed Tylenol for her pain, and while her condition was not "optimal," her back pain had improved by more than fifty percent. (Tr. 285) Dr. Johnson did not note restrictions on Plaintiff's activities, including work. He stated that a "conservative course should be maintained, and I will see her back as her needs arise." (Tr. 271) Dr. Johnson did not, as the Plaintiff suggests, indicate that she was unable to work. Rather, he merely recommended a "conservative course." And, Dr. Johnson did not schedule future appointments, noting that he would treat Plaintiff as needed. (Tr. 271) The record reflects that Plaintiff did not seek further treatment from Dr. Johnson.

Contrary to Plaintiff's suggestion, the ALJ considered the entire medical record and did

- 11 -

not err in failing to consider evidence of Plaintiff's back pain in early 2005, or in failing to consider Dr. Johnson's opinion in October 2006, over 12 months from the onset date. (Tr. 40) Plaintiff suggests that Dr. Johnson opined that Plaintiff could not return to work. The record, however, does not contain such a statement from Dr. Johnson. During a March 1, 2006 follow-up visit, Dr. Johnson stated that Plaintiff should "be completely off work" for at least the "immediate 6 months" following her October 2005 back surgery. (Tr. 275) During an October 3, 2006 follow-up visit, Dr. Johnson recommended a "conservative course," and noted that he would see Plaintiff as the need arose. To the extent Dr. Johnson's statements are "susceptible to more than on rational interpretation," the ALJ's decision must be upheld. *Sandgathe*, 108 F.3d at 980. As noted above, Dr. Johnson's October 3, 2006 statement about a "conservative course," may have referred to Plaintiff's activity level, or to a treatment regimen. Dr. Johnson had stated that Plaintiff should not work for at least the six month period after her October 13, 2005 surgery - or until April, 2006. In October 2006 - a year after Plaintiff's back surgery - Dr. Johnson recommended a "conservative course," and scheduled no further appointments with Plaintiff. The ALJ concluded that, during Plaintiff's October 3, 2006 appointment, Dr. Johnson had "released [Plaintiff] to be seen on an as needed basis," and noted that Plaintiff did not return to see Dr. Johnson after October 3, 2006. (Tr. 40) The ALJ's conclusion that Dr. Johnson had released Plaintiff from his care in October 2006 is rational interpretation that this Court will uphold. *Sandgathe*, 108 F.3d at 980.

**B. Rejection of Treating Physicians' Opinions**

Plaintiff next argues that the ALJ erred in rejecting the opinions of treating physicians, Dr. Johnson, Dr. Kane, and Dr. Kazmi. (Doc. 15 at 5-6)

**1. Dr. Johnson - treating surgeon**

Plaintiff argues that the ALJ erred in rejecting Dr. Johnson's opinion on an assessment form completed in *October* 2006 in which Dr. Johnson stated that Plaintiff was not released to work and was restricted from lifting, bending, twisting, or carrying anything heavier than a coffee cup. (Doc. 15 at 6) The ALJ could not have rejected Dr. Johnson's *October* 2006 assessment that Plaintiff should not work, because there is no such assessment in the record.

- 12 -

As Defendant notes, Plaintiff misstates the record. Dr. Johnson completed an assessment form in March, not October, 2006. (Tr. 347) The date of the assessment is significant, because Dr. Johnson had indicated that Plaintiff should not return to work for at least six months following her October 2005 back surgery. March 2006 was only five months post-surgery, thus, any statements regarding Plaintiff remaining out of work as of March 2006 are supported by the record. The ALJ does not specifically mention Dr. Johnson's statement regarding work made during Plaintiff's March 1, 2006 appointment. (Tr. 40) However, there is no indication that the ALJ rejected that opinion. Rather, the ALJ considered the course of Plaintiff's treatment with Dr. Johnson, and noted Plaintiff's continuing improvement until her final appointment on October 3, 2006, when Dr. Johnson recommended a "conservative course." (Tr. 40) Plaintiff did not seek treatment from Dr. Johnson after October 3, 2006.

Plaintiff, citing 20 C.F.R. § 404.1527, argues that the ALJ "should have given the treating surgeon's opinion the most weight." (Doc. 15) Section 404.1527(c)(2), however, clarifies that the treating physician's opinion should be given controlling weight when that opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(2). An ALJ may not reject a treating physician's opinion unless the ALJ "makes findings setting forth specific legitimate reasons for doing so that are based on substantial evidence in the record." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) If the treating physician's opinion is uncontroverted, the ALJ's reasons for rejecting the opinion must be clear and convincing. *Id.* However, "the treating physician's opinion . . . is not necessarily conclusive as to either a physical condition or to the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

As addressed above, during his last appointment with Plaintiff on October 3, 2006, Dr. Johnson did not specifically state whether Plaintiff was released to work. Rather, he stated that a conservative course should be followed and that he would see Plaintiff as the need arose. (Tr. 271) The ALJ's conclusion that Dr. Johnson had "released Plaintiff," is a rational interpretation of the record. Additionally, even assuming Dr. Johnson had opined that Plaintiff

should not work, such an opinion is inconsistent with his reports that she had normal deep tendon reflexes (Tr. 244), equal, grossly intact strength (Tr. 244, 273), and lumbar spine x-rays that revealed that the orthopedic hardware was in excellent position. (Tr. 244, 273, 288-89, 290) Additionally, an opinion that Plaintiff could not work was inconsistent with Plaintiff's reports to Dr. Johnson that she was "doing wonderful," was very happy with the results of her procedure, and that her back pain was controlled with over-the-counter Tylenol. (Tr. 243-44, 271-72) In summary, the record reflects that Dr. Johnson opined that Plaintiff should not work for at least six months following her October, 2005 back surgery - or until April 2006. A year after Plaintiff's back surgery, on October 3, 2006, Dr. Johnson noted that Plaintiff was doing well, her pain was controlled with non-prescription medication, and had improved by 50 percent. Dr. Johnson recommended a "conservative course," and scheduled no further appointments with Plaintiff. Dr. Johnson did not opine that Plaintiff should remain out of work one year after her surgery. And, if his statement about a "conservative course" could be construed as such an opinion, it is inconsistent with his findings and Plaintiff's reports about her improved condition and is not entitled to controlling weight.

**2. Dr.Kazmi - treating physician**

Plaintiff further argues that the ALJ erred in rejecting the opinion of Dr. Kazmi, who treated Plaintiff post-surgery. Plaintiff specifically refers to Dr. Kazmi's opinion, expressed on an application for a disabled placard, that Plaintiff's ability to walk was restricted. (Doc. 15 at 5) Plaintiff also refers to Dr. Kazmi's opinion that Plaintiff could not work. (Tr. 15 at 6)

The ALJ considered the disability parking identification card application completed by Dr. Kazmi. (Tr. 43) The ALJ noted that Dr. Kazmi checked boxes indicating that Plaintiff was unable to walk 200 feet without resting, was unable to walk without assistance from a person or device, and was severely limited in her ability to walk due to arthritic, neurological or orthopedic condition. (*Id.*) The ALJ concluded that Dr. Kazmi's opinion was not entitled to controlling weight because, "[t]he records demonstrate that he has only seen the

- 14 -

claimant on two occasions, which were a year apart," his opinions were based solely on Plaintiff's allegations; and his opinion that Plaintiff could not work was conclusory and included no supporting explanation. (Tr. 43) The ALJ further noted that Dr. Kazmi was a primary care physician, in contrast to Dr. Johnson, Plaintiff's orthopedic surgeon - a specialist - who performed Plaintiff's back surgery and saw her for follow-up care for a year thereafter. (Tr. 43) Finally, the ALJ correctly noted that treating physician's opinions that are vocational in nature - such as Dr. Kazmi's opinion that Plaintiff could not work - should not be credited because they are an opinion on the application of a statute, a task assigned to the ALJ. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). Thus, the ALJ did not assign significant weight to Dr. Kazmi's opinions. (Tr. 43)

The ALJ's assessment of Dr. Kazmi's opinion is consistent with the law and the record. First, contrary to Plaintiff's assertion that Dr. Kazmi is a "board certified neurologist," the record indicates that Dr. Kazmi practiced internal medicine. (Tr. 326) Thus, the ALJ did not err in describing Dr. Kazmi as a primary care doctor, rather than a specialist.

Next, Dr. Kazmi's opinions - based on two visits a year apart - were inconsistent with the other medical provider's findings, including findings by Dr. Johnson and Dr. Barker of the absence of spinal muscle spasms (Tr. 310); full hip ranges of motion (Tr. 311); strong, normal, equal lower extremity strength (Tr. 244, 273, 311); normal, symmetric upper and lower extremity reflexes (Tr. 244, 311); grossly intact sensation (Tr. 273); the absence of deficits in muscle mass, good balance, negative straight leg raise testing, a narrow-based gait (Tr. 311); and lumbar spine x-rays revealing orthopedic hardware in excellent position and an in-place graft that was doing well (Tr. 244, 273, 288-89, 290). Dr. Kazmi's opinion was also inconsistent with Plaintiff's complaint of back pain, for which she preferred to take non-prescription medication. (Tr. 285, 326)

As the ALJ noted, the medical record did not support Dr. Kazmi's opinion that Plaintiff's ability to walk was significantly restricted and that she required assistance of a device or person to ambulate. Dr. Barker found that Plaintiff did not require a walker for ambulation

- 15 -

1  (Tr. 309), had good balance, and strong and symmetrical muscle strength. (Tr. 311)  Likewise,
2  the ALJ's finding is also supported by Dr. Johnson's medical finding that Plaintiff had grossly
3  intact muscle strength.  (Tr. 244-273)

Additionally, as the ALJ noted, Dr. Kazmi did not have a long-term, or ongoing relationship with Plaintiff.   The record supports the ALJ's finding that Dr. Kazmi only saw Plaintiff twice a year apart.  The length of treatment relationship and frequency of examination are relevant in determining the weight assigned to a medical opinion.  20 C.F.R. § 404.1527(d)(2)(i).

In view of the foregoing, the ALJ properly assigned little weight to Dr. Kazmi's opinions. *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (noting that an ALJ may disregard a treating physician's opinion when it is based on subjective descriptions of symptoms that are properly discounted).

### 3.  Dr. Kane

Plaintiff also argues that the ALJ erred in rejecting the opinion of Dr. Kane, who treated Plaintiff for pain management in early to mid-2005. (Doc. 15 at 5)  Plaintiff argues that the ALJ did not provide a sufficient basis for rejecting Dr. Kane's opinion on "an insurance form showing a very restricted capacity." (*Id.*)

The record reflects that Dr. Kane, an anesthesiologist, examined Plaintiff on June 8, 2005, and treated her low back pain with injections/nerve blocks until August 23, 2005 (Tr. 238)  On examination, Dr. Kane found normal extremity muscle strength throughout (Tr. 239), increased but symmetrical deep tendon reflexes (Tr. 239), minimally decreased thoracolumbar spine ranges of motion (Tr. 239), and questionable left lower extremity sensory deficit (Tr. 239). In a June 30, 2005 statement related to Plaintiff's disability claim, Dr. Kane reported that Plaintiff had the following restrictions, "no lifting greater than 10 [pounds], no prolonged sitting greater than 30 minutes with a break, no bending." (Tr. 344)  Dr. Kane also opined that it was not necessary for Plaintiff to "[t]ake time off work for treatment and/or recovery." (*Id.*)

The ALJ assigned little weight to Dr. Kane's opinion noting that, "[t]he record fails to show that the claimant continued to see Dr. Kane for pain management." (Tr. 40) The record supports the ALJ's conclusion. As the ALJ noted, Dr. Kane's findings during his examination of Plaintiff are inconsistent with Dr. Kane's later findings regarding Plaintiff's residual functional capacity. (Tr. 42) And are also inconsistent with Plaintiff's report to him that pain medication was somewhat effective in controlling her pain. (Tr. 238) In short, the ALJ provided specific and legitimate reasons for giving little weight to Dr. Kane's June, 2005 opinion.

### C. Misinterpretation of Evidence

Finally, Plaintiff argues that the ALJ misinterpreted the evidence to her detriment. (Doc. 15 at 9) Plaintiff first argues that the ALJ did not understand the time frames pertaining to her recovery from back surgery, and the "non-release by the treating surgeon [Dr. Johnson]." (Doc. 15 at 7) The Court has already addressed this issue in relation to Plaintiff's first claim for relief. For the same reasons discussed above, the Court rejects this claim and defers to the decision of the Commissioner. *See Matney*, 981 F.2d at 1016.

Plaintiff next argues that the ALJ rejected Dr. Kazmi's opinion and improperly described him as a "primary care physician." (Doc. 15 at 7) As discussed above, there is nothing in the record to support Plaintiff's assertion that Dr. Kazmi is a "board certified neurologist." Rather, the record reflects that Dr. Kamzi practices internal medicine. (Tr. 326) Plaintiff further argues that the ALJ erred in rejecting the January 2007 opinion of physical therapist, Ms. Stratton. (Doc. 15 at 7) As Defendant argues, a physical therapist's opinion is not considered an acceptable medical source. 20 C.F.R. § 404.1513(a). No physician adopted the opinion of the physical therapist. The simple fact that the physical therapist's assessment was recommended by Dr. Johnson and ordered by Dr. Kazmi does not convert the physical therapist's opinion into that of a treating physician.

On January 22 and 23, 2007, Judy Stratton, P.T., evaluated Plaintiff. (Tr 329-40) Stratton found Plaintiff was not a candidate for physical therapy, because of "extreme neural

tension present in her left lower extremity and trunk." (Tr. 329) As a result, Stratton suggested pain management, including "meditation, relaxation, self hypnosis, and . . . biofeedback exercises." (*Id.*) Stratton concluded that Plaintiff was not "capable of returning to a job either in nursing or in any other occupation in the work force at this time." (Tr. 329)

The physical therapist's opinion is inconsistent with objective medical findings of Dr. Johnson and Dr. Barker including the absence of spinal muscle spasms (Tr. 310); full hip ranges of motion (Tr. 311); strong, normal, equal lower extremity strength (Tr. 244, 273, 311); normal, symmetric upper and lower extremity reflexes (Tr. 244, 311), grossly intact sensation (Tr. 273), the absence of deficits in muscle mass (Tr. 311), good balance (Tr. 311), negative straight leg raise testing (Tr. 311), a narrow-based gait (Tr. 311), and lumbar spine x-rays revealing no loosening of orthopedic hardware and an in-place graft that was doing well (Tr. 244, 273, 288-89, 290).

The physical therapist's opinion was also inconsistent with Dr. Barker's observation that Plaintiff was uncooperative during a physical examination and had to be coaxed to perform activities (Tr. 310), and that she demonstrated inconsistencies between her reports of limitations and her actions (Tr. 311). Dr. Barker reported that Plaintiff would only forward flex her lumbar spine to about 10 degrees, but was able to forward flex to at least 60 degrees when seated. (Tr. 311) He also reported that Plaintiff exhibited increased cervical spine range of motion with distraction (Tr. 311), and that her ranges of motion were suboptimal even in areas where she did not complain of any abnormality. (Tr. 310) Dr. Barker further noted that Plaintiff had no difficulty mounting and dismounting the examination table, or changing clothes; and that she walked with a walker but claimed steps without it. (Tr. 311) Finally, he noted that Plaintiff exhibited strong positive Waddell testing, demonstrating superficial tenderness, positive overreaction, and positive distraction. (Tr. 311)

Plaintiff objects to Dr. Barker's examination and report. (Doc. 15 at 8) Plaintiff argues that Dr. Barker incorrectly reported that she climbed stairs during his examination which was conducted "on the first floor of a Quality Inn in Kingman, Arizona." (*Id.*) Plaintiff's

- 18 -

counsel states that he "has been to that motel and there are no stairs on the first floor." (*Id.*) Counsel's observation on some unspecified time and date of the location where the examination took place is not relevant to this Court's review of the administrative decision at issue. Plaintiff does not provide any reason for Dr. Barker's alleged inaccuracy in his report regarding his examination of Plaintiff. Moreover, Plaintiff testified during the administrative hearing that she could climb steps. (Tr. 15-16) The ALJ may rely on claimant's own statements of limitation in evaluating disability. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

Plaintiff further argues that Dr. Barker indicated that she could return work, which Dr. Johnson considered an interference with his patient's treatment. (Doc. 15 at 8) The only notation in the record indicating that Dr. Barker told Plaintiff she could return to work, is in Dr. Johnson's notes which are based on Plaintiff's statements. (Tr. 273-75) Additionally, assuming Dr. Barker told Plaintiff she could return to work, the ALJ did not rely on this statement in his decision. (Tr. 41)

Upon review of the record, the Court finds that the ALJ gave legitimate and specific explanations supporting his interpretation of the evidence. The ALJ noted that "[Plaintiff's] condition continued to improve past the 6 month recovery period as evidenced by her statements in the contemporaneous records and her level of activity." (Tr. 40) "[S]he indicated to Dr. Kazmi that she had had no relief from her surgery, which is inconsistent with her statements in the contemporaneous records." (Tr. 41) "[T]he records show the claimant was more active than alleged . . . able to go for walks . . . about a fourth of a mile three times a day." (Tr. 41) The ALJ pointed out that, "in October of 2006 the claimant acknowledged that she was doing well" when meeting with Dr. Johnson. (Tr. 40) Dr. Johnson even called her status "clearly improved." (Tr. 271) But, in January of 2007, Plaintiff complained of great pain to Dr. Kazmi. (Tr. 40) The ALJ noted that "[Plaintiff] provided no explanation for her increase in pain . . . at the hearing." (Tr. 41) As a result, "the inconsistencies lessen [Plaintiff's] credibility regarding her level of pain and limitations." (*Id.*)

The ALJ also explained his conclusion that Plaintiff was able to perform jobs

- 19 -

existing in that national economy. The ALJ described Dr. Barker's opinion that Plaintiff could perform light exertional work as "supported by the medical evidence as a whole and the longitudinal treatment history." (Tr. 42) The ALJ also noted that during Dr. Barker's examination, "a cane was not required when the claimant was observed climbing stairs . . . ." (Tr. 43) In discussing the evaluations of Dr. Barker, Dr. LaSalle, and Dr. Ostrowski, the ALJ described their findings that Plaintiff can perform light work as "compelling, as [they are] supported by the great weight of the evidence of the record." (Tr. 43) Lastly, the ALJ explained that he "agrees [with the vocational expert] and finds the claimant retains the residual functional capacity to perform her past relevant work as a medical assistant and a medical records worker." (Tr. 44) The Court finds that the ALJ's conclusions are supported by substantial evidence.

**VII. Conclusion**

The ALJ did not commit legal error in assigning weight to the medical opinions or in assessing the evidence in the record. Additionally, the record contains substantial evidence in support of the ALJ's conclusion that Plaintiff was not disabled. The ALJ correctly assessed Plaintiff's residual functional capacity.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision denying Plaintiff's application for disability benefits is **AFFIRMED**. The Clerk is directed to terminate this action.

DATED this 25th day of July, 2011.

_Lawrence O. Anderson_
Lawrence O. Anderson
United States Magistrate Judge